■ DANIEL ZAGER et al., Appellants, v GALVANIC PRINTING PLATE AND MATRIX CO., INC., Respondent. — Order of Supreme Court, New York County (Louis Grossman, J.), filed August 3, 1982, which granted the defendant's motion for summary judgment is unanimously reversed, on the law, with costs, and the motion for summary judgment is denied. ¶ Special Term erroneously concluded that the agreement of May 1, 1973, "clearly and unambiguously [set] forth the accord reached by the parties with respect to the payment of current (1973-1974) rent and arrears owed to the plaintiffs" and thus, inferentially, represented the entire agreement then existing between the parties, replacing their prior lease agreement. ¶ The defendant Galvanic Printing Plate & Matrix Co. (Galvanic) occupied the sixth and eighth floors of premises 9-13 Barrow Street, also known as 186-192 West 4th Street, owned by the plaintiffs Daniel Zager and Midtown Properties, Inc. (Zager), under a five-year written lease executed in 1968, in which there was reserved a rental of $2,180 per month. A rent credit of $1,867.30 was to be given to the tenant each January and June. This lease was modified in January of 1970, so as to extend the term of the lease to November 30, 1974, and to provide for a payment of $3,800 by Galvanic in satisfaction of rent arrears then outstanding. Additionally, the modification provided for Galvanic to occupy additional space in the building. In that document, the landlord, Zager, acknowledged receipt of the rent arrears payment. Galvanic again fell behind in its rent payments in 1973, and by letter agreement dated May 1, 1973, the parties arranged a payment schedule to liquidate the arrears and to provide for the payment of current rent. That agreement set the total arrears at $4,900.51 and provided a payment schedule. Galvanic also acknowledged that its current monthly rent was $2,586.41 per month, "including a rental sum for * * * electricity consumption of $511.41." ¶ Galvanic moved out of the premises in January, 1975. Various actions begun by plaintiff in 1974, demanding rent, electricity and other arrears, were either dismissed for failure to prosecute or were withdrawn. Zager commenced this action in 1976, seeking to recover $39,586 in arrears claimed to be due under the lease. The complaint alleged that during the period from July 1, 1970 to January, 1975, the tenant was obligated to pay a total of $184,701.20 for rent, electricity, real estate taxes and water charges, all as set forth in schedules attached to the complaint, but that tenant had only paid a total of $132,042.39, which after also deducting rental allowances totaling $13,072.50 left a balance due of $39,586.31. ¶ Galvanic's answer raised various defenses, including accord and satisfaction. It thereafter moved for summary judgment arguing the figures of claimed arrears accumulated prior to May, 1973 were false, that the letter agreement of May, 1973 defined

all rent arrears outstanding at that time, that those arrears had all been paid and that the figures of claimed arrears accumulated subsequent to May, 1973 were false and inaccurate. It attached checks purporting to show payment of all arrears due as per the May, 1973 letter agreement and payment of all subsequent monthly rents up to the termination of the lease. ¶ The lease agreement required tenant to pay, as additional rent, a percentage of the real estate tax increases, if any, over the base year 1967-1968, as well as estimated cost of used electricity. Should the electric rates or costs to the landlord increase or decrease, the tenants' additional rent payments therefor would increase or decrease in like percentage. While the letter agreement sets forth that the tenant owes $4,900.51 in rent arrears as of that date, the letter does not identify the components of those arrears, i.e., whether they include charges for water, electricity and real estate taxes the tenant was required to pay pursuant to the lease. Significantly, that letter refers to a prior letter of April 3, 1973, in which arrears owed were apparently discussed, but neither party has furnished a copy of that letter nor made further reference thereto. Moreover, aside from a reference that the "rental sum" for the tenant's electricity consumption was $511.41, the letter does not indicate whether the reference was intended to establish a fixed electricity charge, superceding the percentage increase or decrease provided for in the lease. ¶ Thus, it is clear that the letter agreement upon which defendant relies as establishing the accord and satisfaction and modification of the lease agreement is ambiguous and the intent of the parties cannot be gleaned from the language of this writing alone. Concur — Sullivan, J. P., Ross, Silverman and Alexander, JJ.